UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL STERN, FREDRICK STERN, MOSHE STERN, AND SIMON STERN | |
| Plaintiffs, | Civil Action No.: |
| v. | |
| CARDIS ENTERPRISES INTERNATIONAL, N.V., CARDIS ENTERPRISES INTERNATIONAL (U.S.A.), GIRL WITH THE BOW, LLC, CHOSHEN ISRAEL, LLC, H GROUP NY, LLC, AARON DAVID FISCHMAN, STEVE BROWN, AND AVI TOKAYER | COMPLAINT |
| Defendants. | |

Plaintiffs SIMON STERN, FREDRICK STERN, MOSHE STERN, DANIEL STERN, and RAPHAEL STERN, by and through their undersigned counsel, bring this action against defendants for securities fraud, common law fraud, fraud in the inducement, equitable fraud, conversion, and unjust enrichment.

Plaintiffs allege the following upon personal knowledge as to themselves and their acts and upon information and belief as to all other matters, based on their own internal investigations and the investigation of counsel. The investigation of counsel is predicated upon, *inter alia*, review and analysis of: (i) documents filed publicly by Cardis with the Securities and Exchange Commission; (ii) press releases, news articles, and other public statements issued by, or concerning, Cardis and the other Defendants named herein; (iii) other publicly available information and data concerning Cardis, its securities, business, and control persons; and (iv) documents issued by Defendants and statements made by Defendants and/or their agents.

1

While Plaintiffs' counsel has obtained, reviewed, and analyzed copies of certain critical documents, transcripts, and reports supporting Plaintiffs' claims as described in detail below, additional documentation and other sources of information concerning the Defendants' fraud continue to be revealed through exploratory efforts. It is necessary, however, to keep in mind that numerous documents supporting the allegations contained herein are known only to Defendants or are exclusively within the Defendants custody/control. Plaintiffs believe in good faith that further significant evidentiary support for the allegations set forth herein will be uncovered upon the commencement of discovery in this action.

## NATURE AND SUMMARY OF THE ACTION

1.      This action arises out of and in connection with the fraudulent activity perpetrated by Defendants pertaining to the purchase and sale of securities. These acts and omissions epitomize the deceptive conduct contemplated by the Securities Exchange Act of 1934 (the "Exchange Act") and the rules promulgated thereunder by the Securities and Exchange Commissions ("SEC"). In connection with these activities, certain Defendants named herein made untrue statements of material fact and/or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; such statements and omissions are also actionable under the Exchange Act and the SEC rules promulgated thereunder.

2.      In effectuating this fraudulent and deceptive scheme, Defendants converted for their own benefit monies provided by Plaintiffs and other purchasers of securities of Cardis International, N.V., ("Cardis"), a foreign corporation with its headquarters in Amsterdam Netherlands and its locally incorporated affiliates.

2

3.     Cardis International N.V. operates in the United States as Cardis Enterprises International (U.S.A.) Inc.  According to statements by former Cardis Enterprises International (U.S.A.) Inc. COO, Morris Berger, Cardis and its locally incorporated affiliates operate without distinction and are, in actuality, one in the same.

4.     Between 2012 and 2013, Plaintiffs to the instant action invested over $150,000 into Girl With the Bow, LLC ("GWTB") for, as subscription documents indicate, the sole purpose of investing in Cardis.  Plaintiffs' investments were made in reliance upon the false statements and omissions made by, or at the direction of, the above-captioned defendants.  Cardis, by and through its directors and officers, held the company out to be the creator and franchisor of certain software products that offer a new, cost-efficient solution to the low-value credit charge industry.

5.     Intentional misstatements of fact were contained in Cardis' private placement memoranda. Specifically, Defendants made material representations with regard to the readiness, value, and sale of products incorporating Cardis' patented technology. Defendants represented that they had software ready for the market; that the corporation was "about to go public;" and that plaintiffs investments would be used for marketing and product development purposes.

6.     Further, Defendants obfuscated the origins of certain Cardis valuation documents, purposefully leading plaintiffs to believe them to be the work-product of independent third-party auditors rather than Cardis' in-house draftsmen.

7.     In reality, Cardis has neither working software nor other product, and the Cardis valuations provided to plaintiffs were in fact the work-product of Cardis agents.

8.     Moreover, in conjunction with its private placement memoranda, Cardis and its agents disseminated certain misrepresentative statements and "press releases" for the purpose of attracting supplementary private investment. Among the fraudulent statements contained therein, Cardis represented itself as having made actual and substantial sales and that its investors had already experienced remarkable rates of return.

9.     Upon information and belief, Cardis had no such sales and none of its investors have profited whatsoever.

10.    Defendants induced Plaintiffs to invest in Cardis despite Defendants' knowledge that information pertaining to Cardis released to the public was falsified and/or embellished, and that Cardis was an unsuitable investment for Plaintiffs.

11.    Plaintiffs were lead to believe that their capital infusion into Cardis had resulted in their collective ownership of approximately 690,750 shares of Cardis stock.

12.    Plaintiffs do not have the net worth, income, experience, or sophistication to qualify as "accredited investors," which was known, or should have been known by the Defendants at the time Plaintiffs' investment monies were accepted.

13.    Upon information and belief, Defendants failed to use *any* of the money generated through its sale of securities for the marketing, product development, or sales of its technologies, as was represented to Plaintiffs.  Instead, it is alleged that the entirety of the capital raised was directly siphoned into the personal bank accounts of certain Defendants through dubious and ambiguously defined "fees" and line items in its financial statements.

14.     In summation, none of the proceeds derived from Plaintiffs' investment went to the development of Cardis or its "technology". Rather, all of the Plaintiffs', and similarly situated investors', money went into the pockets of Cardis' executives, agents, and directors.

15.     When the undisclosed risks of Defendants' scheme materialized, Plaintiffs lost the entirety of their investment in Cardis and its related funding arms. Upon information and belief, the current value of the Plaintiffs' Cardis holdings is $0.

16.     Plaintiffs seek to recover damages caused by Defendants' violations as expounded upon hereafter.

## JURISDICTION & VENUE

17.     The claims asserted herein arise under and pursuant to Section 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§78j(b) (*see Chiarella v. United States*, 445 U.S. 222, 226 (1980)) and 78t(a) (*see SEC v. Pimco Fund Management, LLC*, 341 F. Supp. 2d 454, 467-68 (S.D.N.Y. 2004)), Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the laws of the State of New York.

18.     This Court's jurisdiction over the matter derives from Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. §78aa (*see, e.g., Campito v. McManus*, 470 F. Supp. 986, 995 (N.D.N.Y. 1979)), and the supplemental jurisdiction of this Court. This court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction, *see Fiero v. Financial Indus. Regulatory Auth.*, 606 F. Suppl. 2d 500, 508-09 (S.D.N.Y. 2009) and § 1337(a), Section 22 of the Securities Act of 1933, 15 U.S.C. §77v(a).

19.     Venue is proper in this judicial district pursuant to Section 22(a) of the Securities Act of 1933, 15 U.S.C. §7v; Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. §78aa and 28 U.S.C. §1391(b).  Substantial acts in furtherance of the alleged fraud and/or its effects have occurred within this District.  Additionally, all named Defendants conduct substantial business in this district.

20.     In connection with the acts alleged in this Complaint, Defendants directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

21.     This action is brought within the relevant statute of limitations period; there being no statute of limitations for actions brought under Rule 10b-5 and for securities fraud, the relevant period being that applicable under state law.  See *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210, n. 29 (1976) ("Since no statute of limitations is provided for civil actions under 10(b), the law of limitations of the forum State is followed as in other cases of judicially implied remedies").  Under New York State law, whether the action is brought under New York's Blue Sky Law ("Martin Act") (see N.Y. Gen. Bus. L. § 362c, CPLR §214(2); setting forth a three year statute of limitations period), or under common law fraud (see CPLR § 213(8)), this action is timely, as Plaintiffs discovered the fraud in 2015, well within the respective statute of limitation periods applicable hereto.

### PARTIES

22.     Plaintiff DANIEL STERN is an individual residing in the State of New York, owner of record of a substantial number of shares of Cardis Stock.

23.     Plaintiff FREDRICK STERN is an individual residing in the State of New York, owner of record of a substantial number of shares of Cardis Stock.

24.     Plaintiff MOSHE STERN is an individual residing in the State of New York, owner of record of a substantial number of shares of Cardis Stock.

25.     Plaintiff SIMON STERN is an individual, and resident of the State of New York, owner of record of a substantial number of shares of Cardis Stock.

26.     Plaintiffs DANIEL STERN, FREDRICK STERN, MOSHE STERN, and SIMONE STERN are referred to collectively hereafter as the "Sterns" or "Plaintiffs".

27.     Upon information and belief, Defendant CARDIS INTERNATIONAL, N.V. ("Cardis") is a foreign limited liability corporation duly organized under the laws of Curacao with a principal place of business located at Prins Bernhardplein 200, Amsterdam, 1097 JB, Netherlands.

28.     Upon information and belief, Defendant CARDIS ENTERPRISES INTERNATIONAL (U.S.A.), INC. ("Cardis USA") is a Delaware corporation registered to do business in the State of New York with its principal place of business located at 445 Central Avenue, Cedarhurst, New York, 11516.  Upon further information and belief, Cardis USA is a wholly owned subsidiary, and alter ego of Cardis.

29.     Upon information and belief, Defendant CHOSHEN ISRAEL, LLC ("Choshen") is a limited liability company duly organized and existing under the laws of the State of New York, with a principal place of business located at 445 Central Avenue, Cedarhurst, New York, 11516.  Aaron Fischman, CEO of Cardis USA and Supervisory Board Director of Cardis, serves as Choshen's managing partner.

30.     Upon information and belief, Defendant GIRL WITH THE BOW, LLC, ("GWTB") is a limited liability company duly organized and existing under the laws of the State of New York, with a principal place of business located in Nassau County, New York, and a DOS Process Address C/O Kurzman Law Offices, P.C., 275 N. Middletown Road, Suite 2D, Pearl River, New York, 10965.

31.     Upon information and belief, Defendant H GROUP NY, LLC ("H Group NY") is a limited liability company duly organized and existing under the laws of the State of New York, with a principal place of business located at 333 Buckingham Road, Cedarhurst, New York, 11516.

32.     Upon information and belief, Defendant AARON DAVID FISCHMAN ("Fischman") is an individual residing in the State of New York. Fischman is the Chief Executive Officer of Cardis USA; Supervisory Board Director of Cardis; and, Managing Partner of Choshen. Current FINRA Brokercheck reports indicate that Fischman was censured in 1995 and was subsequently barred associating with any FINRA member as a result of Market Surveillance Committee Complaint No. CMS940104 (the "Surveillance Committee Complaint"). The Surveillance Committee Complaint, which offers 11 "Causes," alleges violations of FINRA's Rules of Fair Practice by Fischman and his associates resulting from the price manipulation of a non-NASDAQ security quoted on the OTC Bulletin, and other related offenses, which include violations of the Exchange Act and a failure to disclose compensation to clients. In association with the Surveillance Committee Complaint, Fischman submitted an Offer of Settlement pursuant to which he was fined $50,000 and barred from association with any NASD member in any capacity.

33.     Upon Information and belief, Defendant AVI TOKAYER ("Tokayer") is an individual residing in Ranan'a, Israel. Tokayer is a co-founder of Cardis and serves on the Supervisory Board of Cardis BV. According to FINRA reports, Tokayer was censured along with Fischman in 1995. In a separate decision,

Tokayer was fined $364,937.50 and barred from association with any NASD member in any capacity. Tokayer was alleged to have manipulated the price of a common stock and failed to appear for testimony as requested by the NASD in connection with the investigation. The NASD found that Fischman and Tokayer effected transactions in customer accounts without obtaining written agreements from customers and that the two had failed to provide risk disclosure statements to customers before effecting the customers' trades. The findings also stated that Fischman and Tokayer failed to provide public customers with the inside bid and ask quotations before effecting transactions for the customers and, when confirming the trade for the customers, failed to disclose compensation. The findings further report that Tokayer patently failed to establish or enforce an effective supervisory system that would have enabled his member firm to prevent the foregoing misconduct.

34.     Upon information and belief, Defendant STEVE BROWN ("Brown") is an individual residing in the State of New York. Brown is the Senior Vice President of Cardis and a CPA.

35.     Defendants identified in ¶¶27-34 are collectively referred to hereafter as "Defendants".

36.     Defendants identified in ¶¶32-34 are collectively referred to hereafter as the "Individual Defendants".

## STATEMENT OF FACTS

37.     Plaintiffs bring this action in an effort to seek redress for the injuries suffered, and to be suffered, as a direct result of the breach of fiduciary duties, abuse of control, gross mismanagement, negligence, and fraud alleged herein.

38.     Plaintiffs are investors, either directly or indirectly in Cardis, and were investors in Cardis at all times relevant to Defendants wrongful course of conduct alleged herein.

## CARDIS: A BRIEF HISTORY

39.     In 1998, Cardis Enterprises International NV, ("Cardis") a Curacao company, was incorporated, as were its two wholly owned subsidiaries Cardis Enterprises International BV in the Netherlands and Cardis R&D Ltd in Israel.

40.     Cardis International N.V. operates in the United States as Cardis Enterprises International (U.S.A.) Inc. ("Cardis USA"). According to statements by former Cardis USA COO, Morris Berger, Cardis and its locally incorporated affiliates operate without distinction and are, in actuality, one in the same

41.     Cardis purports to provide unique solutions for processing of low value payments with "game changing" cost efficiency. Through patented aggregation technology, Cardis seeks to align the interests of banks, payments schemes and retailers in driving the global move to cashless payments with significant economic benefits to businesses by reducing the fees associated with low value payments ("LVP").

42.     Cardis' stated objective and strategy was/is to secure wide adoption of the Cardis technology, become a global standard for processing LVPs in physical retail and m/e-commerce, and to bring the company public.

43.     Cardis' funding is provided through Choshen, a New York limited liability company owned and operated by Fischman and Tokayer. Choshen has raised capital for Cardis through a variety of investment instruments, including

debt and equity and through private placement.  Fischman and Tokayer serve both as the principals in Choshen and the founders of Cardis.

44.     Fischman, Tokayer, and Brown, as a result of their respective positions within the Cardis corporate structure as directors and officers, possessed the power and authority to control the contents of private placement offerings of Cardis, including their private placement memoranda, internal accounting procedures, and representations made by their agents when securities were sold to Plaintiffs.

45.     The Individual Defendants either, disseminated the false and misleading information contained in Cardis' public releases and directed the false and misleading statements made by their agents, or knew that these statements were being made to investors and potential investors and were materially false or misleading.

## DEFENDANT'S MISREPRESENTATIONS, OMISSIONS, AND DECEPTIVE MARKETING

46.     Between 2010 and the date of filing, Cardis, by and through its various corporate affiliates and agents, engaged in a number of private placement offerings as a means of financing the company's business endeavors.

47.     In or about 2012, Plaintiff Simon Stern was approached by Moshie Horn ("Horn"), Director of Investor Relations at Cardis, about the prospect of investing in Cardis, during which time Horn relayed the general nature of Cardis' business model and the company's prospects for future growth.

48.     During his communications with Plaintiff Simon Stern, Horn intimated that Cardis' would likely be going public within six months and that the

window for investment into the company at the then-current offering rate was closing. As of the date of filing, Cardis remains a private company.

49.    Upon information and belief, Horn's diatribe concerning Cardis' growth prospects and intentions to go public were the fraudulent constructs of Cardis' scheme to defraud investors and was issued to Horn by his superiors, the Individual Defendants named herein.

50.    In an effort to procure investment, Horn forwarded Plaintiffs several documents concerning Cardis' expected development, including its private placement memoranda and power points. Among the statements therein, it was claimed that:

> a.  Cardis would, "develop advanced sales dialogues into full deployments between 2012 and 2014 where adoption curve is steep." The company has yet to make any deployments and continues to have no revenue stream.

> b.  Cardis was to, "execute on current European rollout to get the Cardis Solution to the marketplace and demonstrate success to payments system players." No such rollout ever occurred.

> c.  Cardis was, "marketing its product to major banks, acquirers, and retail organizations with the objective to secure further rollouts in Europe, North America, an internationally – Latin America, Asia, Australia." Upon information and belief, this marketing effort never materialized.

d. Competitors' mobile payment technologies, "rely on the payment scheme contactless debit/credit as payment instruments or for funding source (e.g Google Wallet, PayPal...) Accordingly, <u>they are not competitive to Cardis</u>." (<u>Emphasis in original</u>).  Estimates show that over 50 million people use Google Wallet regularly; more than 169 million individuals worldwide use PayPal; and recent addition to the mobile payment arena "ApplePay" also has already found support in millions of users.  Meanwhile, Cardis, which asserts that the aforementioned entities are not true competitors, possess absolutely no share of the mobile payment market.

e. Cardis had signed a, "commercial contract with Raiffeisen Bank (largest Austrian banking group) for implementation and rollout in Q2 of 2012, in conjunction with Visa Europe.  In discussions to expand the relationship to cover Debit Card rollout and E-Commerce.  In addition, Raiffeisen has introduced [Cardis'] joint project to other Austria Banks, most notably Bank of Austria to help create mass consumer acceptance across Austria."  Outside of a press release noting the deal above, no rollout or implementation ever occurred, and subsequent searches of Raiffeisen Banks online platforms provide no mention of any continued affiliation with Cardis. [1]

---

[1] Additionally, in a press release, dated January 27, 2012, it was announced that Raiffeisen Bank International AG ("RBI") would be introducing "CardMobile," the first mobile payment solution enabling users to pay contactless and without any debit or credit card, combining V-PAY by Visa Europe with Cardis' LVP plug-in.

f.  Cardis had signed a, LOI and finalizing contract with Sberbank (the largest bank in Russia with 70 million debit cards issued) for a pilot in Q3 2012 to be followed by market rollout on debit cards."  As in the case with Raiffeisen, no such rollout ever took place, and subsequent searches of Sberbank's online platforms provide no mention of any continued affiliation with Cardis.[2]

g.  Cardis further claimed to be "in discussions" with entities spanning the globe, including: Star and Pulse debit networks; First Data; Discover, SunTrust; TSYS; Instant Communication; Axiata; UniCredit; MPS; Bancomat; RUPAY; and Visa.  Upon information and belief, these "discussions" were materially overstated to induce reliance and investment.  As of the date of filing, due diligence indicates that Cardis has no relation with any of the previously noted entities.

h.  Cardis "expects to have significant gross margins of over 95% after rollouts on revenue from its core software

---

Current searches of RBI and V-PAY make no mention of the "CardMobile" payment solution or any connection to Cardis.  Further, despite continuing to advertise press releases about RBI's "CardMobile" initiative, details about the apparent demise of the program are nonexistent.

[2] In another press release, dated March 12, 2013, Sberbank of Russia is alleged to have implemented a pilot project with a dual interface chip card product and specific low value payment functionality using Cardis' technology.  As was the case with RBI, current searches of Sberbank fail to provide any information pertaining to any further use or development of this pilot project.

licensing business." Financial statements indicate that Cardis remains in operation exclusively because it continues to sell it securities, which upon information and belief are valueless.

51.    To facilitate investment by private individuals into Cardis, Horn, an agent of Cardis, formed GWTB to pool the investment funds of GWTB's members for the sole purpose of investing in Cardis. Investment by GWTB in Cardis was to be made through Choshen. H Group NY, another New York limited liability company formed Horn was to serve as the managing member of GWTB. Upon information and belief, both GWTB and H Group NY were organized by Horn at the direction of the Individual Defendants in furtherance to of their scheme to defraud investors.

52.    Cardis' control over GWTB and other investment vehicles, and the lack of delineation and autonomy there between, is evidenced by the fact that all information relayed to Plaintiffs concerning their respective investments was provided on Cardis' company letterhead, not GWTB or any other related entity.

53.    Despite stating that, "the reason we made GWTB was to allow you to invest [in Cardis] by means of a tranche," upon information and belief, the compartmentalization of investment into Cardis through the aforementioned LLCs, and the control of said LLCs, are part-and-parcel of Cardis' scheme to circumvent securities laws and prevent liability from falling upon Cardis and its officers.

54.    Tranching investments poses several risks not typically associated with standard equity securitized investments. Beyond the challenges posed by estimation of the asset pool's loss distribution, tranching requires detailed, deal-specific documentation to ensure that the desired characteristics, such as the seniority ordering the various tranches, will be delivered under all plausible

scenarios.  In addition, the complexity of these deals is further increased by the need to account for the involvement of asset managers whose own incentives to act in the interest of some investor classes at the expense of others may need to be balanced.

55.    Plaintiffs do not have the net worth, income, experience, or sophistication to qualify as "accredited investors," which was known, or should have been known, by the Defendants.

56.    With this level of increased complexity, less sophisticated investors have a harder time understanding them and thus are less able to make informed investment decisions.  Plaintiffs were not provided the necessary documentation required to make an informed investment decision in the instant action.

57.    While critical documentation was notably absent from the materials afforded to Plaintiffs, Plaintiffs were provided with a "news release" from February 2012 in which Cardis touts, "First In-Market Deployment of Cardis Technology Heralds Global Move Away From Cash," and further intimating that, "Cardis has commercially launched its unique low value payment software plug-in for banks, processors, payments schemes and merchants."  However, according to Cardis' own financial statements for 2012, the company had no revenue in 2012.  The only logical conclusion to be drawn when juxtaposing these pieces of information is that Cardis' "commercial launch" was mere propaganda to help solicit investment.  As detailed herein, Cardis' fraudulent puffery was effective in attracting investment from the Sterns and similarly situated investors.

58.     Though Cardis provided investors and prospective investors with financial statements prepared by independent auditor, BDO B.V. [3] , upon information and belief, these reports were commissioned exclusively to present the appearance of conformity with applicable laws and standards, and to quell suspicions of impropriety.   In drafting these documents, BDO was ethically prohibited from forming an opinion on Cardis due to the fact that Cardis systematically failed to provide all necessary documentation to enable BDO to offer such an opinion.  As BDO notes in its report, "we were not able to obtain sufficient appropriate audit evidence to provide a basis for an audit opinion."

59.     On or about November 13, 2012, relying on the written and oral statements provided by Defendants and their agents, Plaintiff Simon Stern made his first investment in Cardis by way of GWTB for $30,000.

60.     On or about December 4, 2012, Cardis issued a letter, stating in pertinent part that, "every single investor…has already profited, some as much as 100%."  Upon information and belief, this representation of investor success is a flagrant fabrication.

61.     On or about December 27, 2012, Cardis issued a letter to those individuals who had invested in the company by way of GWTB.   In this communication, less than a month after claiming that "every investor…[had] already profited, some as much as 100%," Cardis now sought to claim that, "you have all increased your investment capital, some by as much as 350%".

62.     Upon learning of these portrayals of Cardis, both through Simon Stern and Cardis agent Moshie Horn, Plaintiffs Fredrick Stern, Moshe Stern, Daniel

---

[3] BDO B.V., is a limited liability company incorporated in the Netherlands Antilles, is a member of BDO International Limited, a UK company limited by guarantee, and forms part of the International BDO network of independent member firms.

Stern, and Raphael Stern were enticed by the information provided and accounts of Cardis, and began contemplating their own investments.

63.    In an attempt to secure the investment monies of Fredrick Stern, Moshe Stern, Daniel Stern, and Raphael Stern, and additional contributions from Simon Stern, Defendants provided Plaintiffs with documentation presenting information about Cardis' valuation.   While Plaintiffs were lead to believe that these materials were formulated by an independent entity, they were in fact produced by Defendants and fabricated pursuant to their own farcical beliefs of Cardis' value.

64.    These characterizations were critical to Plaintiffs decision to invest because, as a foreign-based corporation, valuations, along with the oral representations that the company would be going public within six months, served to assure investors that Cardis was stable and had achieved a level of transparency expected from companies seeking to be traded publicly in the United States.

65.    Defendant Steve Brown would later affirm fears that Cardis' valuation figures were produced in-house.  On or about May 14, 2015, in an email to Simon Stern, Brown stated, "Cardis has not used an outside valuation firm to value its stock...so there is no set valuation...That said...Cardis management is of the opinion that if we execute our business objectives, the value of Cardis at an exit would be worth in excess of $1Billion."

66.    Defendants' irrationally optimistic statements concerning Cardis, its positive financial reports, and Defendants' concealment of integral information, resulted in the Sterns investing significant sums of money into the corporation by the end of 2013. Unbeknownst to the Sterns and similarly situated investors, however, they were not acquiring an asset, but rather a liability.

67.     On or about March 11, 2013, predicated upon the written and oral statements of Defendants and their agents, Plaintiff Moshe Stern invested $15,000 in Cardis by way of GWTB.

68.     On or about March 11, 2013, in reliance upon the written and oral statements of Defendants and their agents, Plaintiff Daniel Stern invested $10,000 in Cardis by way of GWTB.

69.     On or about July 2, 2013 in reliance upon the written and oral statements of Defendants and their agents, Plaintiff Fredrick Stern invested $25,000 in Cardis by way of GWTB.

70.     On or about October 21, 2013 in reliance upon the written and oral statements of Defendants and their agents, Plaintiff Fredrick Stern invested an additional $50,000 in Cardis by way of GWTB.

71.     Thereafter, in the autumn of 2013, again relying on the written and oral statements of Defendants and their agents, Plaintiff Simon Stern invested an additional $20,000 in Cardis by way of GWTB.

72.     In executing the subscription documents for their investments in GWTB, Plaintiffs signed, but did not fill out, the accompanying "Accredited Investor Questionnaire."   Pursuantly, subsequent acceptance of investment monies by Defendants was improper under the circumstances.

73.     Throughout Plaintiffs' period of investment, Defendants repeatedly stated that its results of operations and financial audits were accurate, that its internal financial controls were sound, that its technology was market-ready, that relationships were in place to commence rollout, and that its financial statements and reports were prepared in accordance with applicable standards.   These

statements were materially false and misleading, and were known by Defendants to be false, or were recklessly disregarded as such thereby. To reach the Company's alleged business-objectives, Defendants misled investors as to Cardis' profitability, strength, and growth potential, as well as the integrity and conformity of its financial statements with applicable standards, and the company's internal financial controls and accounting.

74.   Each Defendant knew that such statements and documentation would be issued or disseminated to investors and potential investors, and knowingly and substantially participated in or acquiesced in the drafting, issuance, or proliferation of, such statements or documents as a primary violation of the federal securities laws.

75.   In a "Cardis Update," sent to the Plaintiffs by email on or about November 11, 2014, Cardis details an anticipated launch wherein Cardis was to provide the exclusive payment system for ByStorm Entertainment, a multifaceted media company. While the email suggests the working relationship between the parties was to commence six weeks from shareholders receipt of the document, no such launch ever materialized. Current searches of ByStorm Entertainment's web platforms make no mention of Cardis. Further, an article published on April 7, 2015 by *BusinessWire* states that ByStorm Entertainment has partnered with "Oink," a provider of award-winning payment technology.

76.   In or about March 2014 Plaintiffs reviewed a press release issued by Cardis on October 9, 2013, which claimed that it had a functional product that would enable "several customer transactions made at different retailers to be handled with only one transaction processed through the payment network, thereby significantly lowering the overall transaction costs." It also claimed that this allegedly functional product was being used by a company named "Spindle" to assist it with processing credit card transactions in vending machines.

77.     Upon information and belief, there was and is no such functional product and the deal with Spindle was not an arm's length transaction.  Rather, it was part of the Defendants' scheme to defraud.

78.     By virtue of their receipt or reckless disregard of information reflecting the true facts pertaining to Cardis, their control over and/or receipt, and/or modification of Cardis', Choshen's, and Girl With the Bow's materially misleading statements, and/or their other associations with Cardis, each Defendant knowingly or recklessly participated in the fraudulent scheme and conduct alleged in this Complaint.

79.     In early 2015, alarmed by the fact that none of the supposed relationships and rollouts touted by Cardis had to come to fruition, and that the company had failed to come remotely close to reaching its projections during any fiscal year, Plaintiff Simon Stern requested a ledger identifying the Sterns' Cardis holdings.

80.     In response to his request for information, Plaintiff Simon Stern received responses from both Moshie Horn and Steve Brown.  The figures provided by both individuals varied significantly, and further, each presented incongruities with the ledger provided to Simon Stern after his initial investment in 2012.

81.     Curiously, despite having invested in Cardis through GWTB, which in turn invested in Choshen, before funds were ultimately invested in Cardis, Cardis agents Horn and Brown quoted shares being owned by the Sterns individually rather than the investment vehicles through which their investments were allegedly made.

82.   The fact that Cardis would have record of the individual Stern investments casts genuine suspicion on the legitimacy of Cardis and the associated entities complained of herein.   As Annex B to the GWTB operating agreement, entitled, "Investment Program," states, "[GWTB] was formed to pool investment funds of the Members for the sole purpose of investing in Cardis, which investment shall be made through Choshen Israel Group."   Given that GWTB invested in Choshen, which then invested in Cardis, it defies logic and recognized business practices that Cardis would possess data on the interests of individual pooled investors, rather than simply maintaining record of the entity through which investment was made.

83.   In early 2015, Plaintiff Daniel Stern approached Cardis Agent, Moshie Horn, about the Sterns' displeasure over these developments.   During their exchange, Horn became irate and admitted that he knew someone who had, "lost ten times as much as [Daniel]."   When pressed further on the matter, Horn became unresponsive.

84.   In light of the mounting inconsistencies in Defendants' statements and performance, the Sterns commenced the instant action.

85.   In accordance with Defendants' scheme and illegal course of conduct, the publication and dissemination of materially false and misleading statements concerning Cardis had the effect of inducing investment by unaccredited investors.

86.   The Individual Defendants named herein are liable for the false statements articulated in this Complaint, as each one of those statements was "group-published" information, the result of the collective actions of Individual Defendants.

DEFENDANTS MADE THE MISREPRESENTATIONS & OMISSIONS WITH SCIENTER

87.    Defendants made the misrepresentations and omissions described herein with scienter, as demonstrated by the following facts.

88.    At all relevant times, the material misrepresentations and omissions made to Plaintiffs, between 2012 and 2013, directly or proximately caused, or were a substantial contributing factor to, the damages sustained by the Plaintiffs elucidated herein.

89.    Individual Defendants, who control the activities of Cardis knew, or should have known, about the actual status of Cardis' the likes of Raiffeisen and Sberbank.    However, despite the fact that these deals never materialized and garnered no revenue for the company, Cardis used, and continues to use, these relationships in promotional materials targeted at attracting investment.

90.    Further, with regards to Cardis' valuation material, Individual Defendants purposefully subverted, or caused to be subverted, whether these materials were prepared by a third party, or by an inside agent.    While Plaintiffs were lead to believe that independent third parties were responsible for drafting these materials, they were not.

91.    Defendants made, or caused to be made, materially misleading statements and omissions about Cardis' business, future prospects and growth potential.    The material misstatements and omissions caused the Stern Plaintiffs to have specious comprehensions about Cardis' business, future prospects, and growth potential.    These misapprehensions, promoted by Defendants, caused the Stern Plaintiffs to purchase stock through 2013, and caused the damages complained of herein.

92.   The information given to the aforementioned agents by the Individual Defendants, their associates, and agents, was materially untrue.  The Individual Defendants' claims that working software had been completed, and that sales of working software to end-users, were known to be false at the time of dissemination.

93.   Defendants also misrepresented the use of the proceeds of the Sterns' and other investors' capital contributions.  Defendants stated that the vast majority of the proceeds raised in the private placement offerings had been, and would be used for: branding, marketing, and product development.  Instead, however, as the Defendants were aware, all of those proceeds went directly to company directors and officers as executive salaries and directors' fees to Defendants.   Upon information and belief, none of the money that the Sterns and other investors contributed went towards the development of Cardis.  Defendants were aware of the history of the use of the proceeds and they were aware that there were no plans to use future proceeds as represented to the Sterns and other investors.

94.   In making their respective investments, the Stern Plaintiffs reasonably relied on these and other material misrepresentations made by the Defendants.

95.   Defendants' actions constitute blatant, unmitigated, fraud.  Had the Sterns been provided factual material representations of the use (or rather, misuse) of their investment monies, they would not have chosen to invest in Cardis.

## LOSS CAUSATION

96.   As has been detailed herein, the Defendants made false and misleading statements and engaged in a scheme to deceive Plaintiffs and other similarly situated investors by falsifying Cardis' product development information

and sales figures, as well as misrepresenting the use of the proceeds of the investors' equity purchases.  In actuality, Cardis did not, and currently does not, have the technology it claims to have, the relationships it claims to have fostered, and the proceeds of the investments made into the company served only to bolster the pockets of Cardis' directors and officers, rather than the company itself.

97.    As a result of the Stern Plaintiffs' investments in Cardis, the Sterns have suffered damages as economic loss pursuant to federal securities laws.

### FIRST CLAIM FOR RELIEF
VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10(B)-5
PROMULGATED THEREUNDER
(AGAINST ALL DEFENDANTS)

98.    Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 98 of this Complaint is if fully set forth herein.

99.    As detailed herein, Defendants carried out a scheme and course of conduct which intended to, and did: (i) deceive Plaintiffs and (ii) cause Plaintiffs to purchase equity in Cardis.  In furtherance of this of this unlawful scheme and course of conduct, Defendants took part of the actions set forth herein.

100.  Defendants committed the following acts: (i) employed devices schemes, and artifices to defraud; (ii) made false statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of dealing that operated as a fraud and deceit upon Plaintiffs in violation of Section 10(b) of the Exchange Act and Rule 10(b)-5 promulgated thereunder.

101.     All of the Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein, or as control persons as alleged below. The Defendants, both individually and in concert, directly and indirectly, through the use, means, and/or instrumentalities of interstate commerce and mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations, and past history and future prospects of Cardis as specified herein.

102.     The Defendants employed devices, schemes, and artifices to defraud and engage in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Cardis' value, performance, and growth, which included the making of, or participation in the publication of, untrue statements of material facts and/or the omission of material facts necessary to make the statements made about Cardis and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon Plaintiffs and those similarly situated.

103.     The Defendants' primary liability and control person liability arises from the following facts: (i) the Defendants were high-level directors, executives, and/or agents of Cardis and/or, members of Cardis' management team, or had control thereof; (ii) each of the Defendants, by virtue of his responsibilities and activities as an officer or director of Cardis was privy to and participated in, the creation, development, and distribution of Cardis' private placement memoranda and other documentation detailing the intricacies of the company and its financial condition; (iii) each of the defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to other members of the Cardis management team, internal reports, and other data and information about Cardis' finances, operations, and sales at all relevant times; and, (iv) each of the Defendants was aware of Cardis' dissemination of information to

investors which they knew or recklessly disregarded was materially false and misleading.

104.   Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard of the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.   These misrepresentations and/or omissions were material, and were published and/or omitted for the purpose and effect of concealing Cardis' true operation condition and future business prospects from investors and potential investors as a means of defrauding investors by taking the proceeds of such investments for themselves.

105.   As demonstrated by Defendants' overstatements and misstatements of Cardis' sales figures and use of offering proceeds, Defendants, if they indeed lacked actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking the necessary steps to discover whether those statements were false and misleading as required by law.

106.   Plaintiffs purchased Cardis securities in ignorance of the fact that: (i) Cardis' statements about its product and product readiness were untrue; (ii) Cardis' sales figures were inaccurate; (iii) that statements that the company was on the verge of going public were untrue; (iv) that Cardis' representations of its use of the offering proceeds were untrue; (v) that Cardis had certain business relationships in place that would bring its product to the consumer marketplace were untrue. Relying directly or indirectly on these false and misleading statements made by Defendants, Plaintiffs have been damaged.

107.   At the time of those misrepresentations and omissions, Plaintiffs were ignorant of their falsity, believed them to be true, and no means of independently

verifying the veracity of these statements existed.  Had the Plaintiffs known the truth regarding Cardis' functionality, development, and use of investment proceeds, which were not fully disclosed by the Defendants, the Plaintiffs would not have purchased Cardis stock.

108.   By virtue of the foregoing, the Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

109.   As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages in connection with the purchase of Cardis common stock, which upon information and belief, is now worthless.

110.   This action was filed within two years of discovery of the fraud and within five years of the Plaintiffs' purchase of the securities giving rise to this action.

## SECOND CLAIM FOR RELIEF
### VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT
(AGAINST ALL DEFENDANTS)

111.   Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 110 of this Complaint is if fully set forth herein.

112.   Defendants acted as control persons of Cardis, within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, ownership, participation in, and/or awareness of, Cardis' operations, as well as the intimate knowledge of the false statements contained in private placement memoranda and other documentation detailing the intricacies of the company and its financial condition and disseminated to Plaintiffs and similarly situated investors. Defendants had the power, influence, and control, whether

directly or indirectly, to affect the decision-making of Cardis, including the content and dissemination of the various statements that were (and continue to be) false and misleading.

113.    Defendants were provided with the statements alleged by Plaintiffs to have been misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.    In particular, each defendant had direct and supervisory involvement in the day-to-day operations of Cardis, and consequently, is presumed to have had the power to control or influence the particular transactions and communications giving rise to securities violations being alleged herein.

114.    As set forth above, Defendants each violated Section 10(b) of and Rule 10b-5 through their acts and/or omissions as alleged in this Complaint.

115.    By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages as a result of their purchase of Cardis stock.

116.    This action was filed within two years of discovery of the fraud and within five years of the Plaintiffs' purchase of the securities giving rise to this action.

### THIRD CLAIM FOR RELIEF
COMMON LAW FRAUD
(AGAINST ALL DEFENDANTS)

117. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 116 of this Complaint is if fully set forth herein.

118. Defendants made material oral and written misrepresentations and/or omitted material facts necessary to make statements not misleading regarding Cardis' products and product readiness; sales figures; Cardis' plans to list shares on a nationally-traded exchange; Cardis' intended use of the Sterns' and similarly situated investors' monetary contributions; and additional matters described above.

119. At the time the material misrepresentations and omissions were made, Defendants knew them to be false, or alternatively, recklessly disregarded their veracity, and did so with the intention of causing the Sterns to provide funding to Cardis.

120. Defendants were aware that the false information would be used by the Sterns, known parties, for the particular purpose described herein. Accordingly, Defendants knew, intended, and understood that Plaintiffs would act or decide not to act in reliance upon such representations and omissions.

121. Plaintiffs received and reasonably relied upon the false representations and omissions of material fact for the particular purposes described herein.

122. Plaintiffs' reliance was foreseeable and justified.

123. Plaintiffs' reliance caused pecuniary loss as described herein.

124.   Plaintiffs are therefore entitled to damages caused by this wrongful conduct in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
FRAUD IN THE INDUCEMENT
(AGAINST ALL DEFENDANTS)

125.   Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 124 of this Complaint as if fully set forth herein.

126.   Defendants made material oral and written misrepresentations and/or omitted material facts necessary to make statements not misleading regarding Cardis' products and product readiness; sales figures; Cardis' plans to list shares on a nationally-traded exchange; Cardis' intended use of the Sterns' and similarly situated investors' monetary contributions; and additional matters described above.

127.   At the time the material misrepresentations and omissions were made, Defendants knew them to be false, or alternatively, recklessly disregarded their veracity, and did so with the intention of causing the Sterns to provide funding to Cardis.

128.   Defendants were aware that the false information would be used by the Sterns, known parties, for the particular purpose described herein. Accordingly, Defendants knew, intended, and understood that Plaintiffs would act or decide not to act in reliance upon such representations and omissions.

129.   Plaintiffs received and reasonably relied upon the false representations and omissions of material fact for the particular purposes described herein.

130.   Plaintiffs' reliance was foreseeable and justified.

131.   Plaintiffs' reliance caused pecuniary loss as described herein.

132.   Plaintiffs are therefore entitled to damages caused by this wrongful conduct in an amount to be determined at trial.

### FIFTH CLAIM FOR RELIEF
#### EQUITABLE FRAUD
(AGAINST ALL DEFENDANTS)

133.   Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 132 of this Complaint as if fully set forth herein.

134.   Defendants misrepresented and concealed material facts as to the terms of Plaintiffs' investment.

135.   As a result of Defendants' equitable fraud, Plaintiffs have been damaged.

### SIXTH CLAIM FOR RELIEF
#### ACCOUNTING
(AGAINST ALL DEFENDANTS)

136.   Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 135 of this Complaint is if fully set forth herein.

137.   By virtue of the promises and agreements described above and Plaintiffs' status as a shareholder of Cardis, Plaintiffs are entitled to a full accounting of sales, transfers, assignments, liens, encumbrances, payments, fees,

salaries, and/or other dispositions of any and all Cardis funds and assets since the date of Cardis' formation.

## SEVENTH CLAIM FOR RELIEF
### CONVERSION
### (AGAINST ALL DEFENDANTS)

138.  Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 137 of this Complaint as if fully set forth herein.

139.  Plaintiffs made investment in Cardis based on the understanding that the capital infusion provided by their investment would be used for the development and marketing of the company and its products.

140.  Defendants converted these proceeds for their own use, exercising unauthorized dominion and control over the use of these monies resulting in the exclusion of Plaintiffs' rights.

141.  As a result of Defendants' wrongful conversion, Plaintiffs have been damaged.

## EIGHTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT
### (AGAINST ALL DEFENDANTS)

142.  Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 141 of this Complaint as if fully set forth herein.

143.   Plaintiffs made investment in Cardis based on the understanding that the capital infusion provided by their investment would be used for the development and marketing of the company and its products.

144.   Defendants have secreted these monies away for their own use without consideration or justification.

145.   As a result, Defendants have been unjustly enriched by Plaintiffs' investment and Plaintiffs have been damaged.

## PUNITIVE DAMAGES

146.   As a direct and proximate result of Defendants' violations alleged herein, Plaintiffs have been significantly damaged in an amount to be proven at trial.  Plaintiffs are also entitled to an award of punitive damages, as Defendants' actions were intentional, aggravated, and committed with an evil mind and with the intent to cause injury, or in reckless disregard of the substantial risk of harm to the Plaintiffs and those similarly situated.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs DANIEL STERN, FREDRICK STERN, MOSHE STERN, and SIMON STERN seek judgment and relief against Defendants CARDIS ENTERPRISES INTERNATIONAL, N.V., CARDIS ENTERPRISES INTERNATIONAL (U.S.A.), GIRL WITH THE BOW, LLC, CHOSHEN ISRAEL, LLC, H GROUP NY, LLC, AARON DAVID FISCHMAN, STEVE BROWN, AND AVI TOKAYER as follows:

a. An award of compensatory damages in favor of Plaintiffs against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be determined at trial, but not less than $150,000, including interest accrued thereupon;

b. Punitive damages in an amount to be determined at trial;

c. An award for Plaintiffs' reasonable costs and expenses incurred in bringing this action, including, but not limited to counsel and expert fees; and

d. Any and all further relief that this Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiffs hereby request a trial by jury for all issues so triable.

**Dated**:  New York, New York
October 13, 2015

RESPECTFULLY SUBMITTED,
GARSON, SEGAL,
STEINMETZ, FLADGATE LLP
*ATTORNEYS FOR PLAINTIFF*

BY: _____
MICHAEL STEINMETZ
164 WEST 25TH STREET
SUITE 11R
NEW YORK, NY 10001
TELEPHONE: (212) 380-3623
FACSIMILE: (347) 537-4540
EMAIL: MS@GS2LAW.COM